argument in the case of Calderone against City of Chicago number 192858 and we will begin with Mr. Casper. Good morning, Your Honors. Cass Thomas Casper appearing remotely via Zoom for the plaintiff appellant Keli Calderone. I'd like to request two minutes reserved for rebuttal and may it please the court. Your Honor, this case involves the question of whether or not there is a protected Second Amendment right that's clearly established to keep and use a gun outside of the home for self-defense purposes. So can I ask you what exactly you think the Second Amendment has to say about that? So let me give you two hypotheticals which I seems to me are at opposite ends of the spectrum. Hypothetical number one, I call you a dirty rotten scoundrel and you a lawful gun owner pull out your gun and shoot me because you're very insulted. Hypothetical number two, I come up to you and I pull a gun on you and I'm getting ready to fire it and you pull your gun out and act in self-defense. So in one of those cases I think we would say a self-defense claim is frivolous. In the other case we would say a self-defense claim is very well grounded but the content of the scope of the right of self-defense it seems to me comes from sources of law not the Second Amendment. It comes from state law primarily or potentially there might be some instances on a Indian reservation or something maybe it comes from federal law. Maybe there's a constitutional floor somewhere so if the right to use a gun in self-defense in this state maybe there'd be a due process issue but I just don't see where the Second Amendment infuses any content into the idea of self-defense. Your Honor, the hypothetical number two would be the good self-defense claim. Because state law recognizes, I mean I'm assuming every state would recognize self-defense in hypothetical number two. I'm trying to but why does the Second Amendment, you know, I could defend myself in hypothetical two if I had a switchblade knife I could defend myself if I was really fast with my fists. There's nothing about a gun that makes it self-defense or not. Your Honor, the reason that it is a good Second Amendment claim is because of the Moore versus Madigan case which is the case from this court in 2012 that is still good law and I just rechecked it actually this morning to be sure it is still 100% good law and in fact this case could be my entire oral argument and in my entire response to your question, Judge, why hypothetical number two does it does involve Second Amendment protected conduct. Mr. Kasper, I think that although I was interested that the city didn't mention Moore but in the end I think that Moore establishes the right to carry firearms in public but doesn't clearly establish a right to use firearms in public for self-defense and it certainly doesn't define the contours of the right of self-defense for the purposes of the Second Amendment. I am having difficulty with your thinking that Moore takes care of this entire case. Well, Your Honor, that has been my position from the beginning. But the thing is, Moore says you can carry the gun but to go back to my two hypotheticals, Moore doesn't say you get to use the gun every time you subjectively think you'd like to use it or every time you subjectively think that you are, you know, kind of a floor to stand your ground or whatever, that you think you're in some danger. There are legal criteria for when self-defense is a justification for the use of deadly force and those criteria don't come from the Second Amendment. They come from state law, largely. Well, there's nothing about our position that would diminish the law of self-defense or the criteria for self-defense. But nobody is saying that your client didn't have a right to carry a gun. It was the decision to use the gun in certain situation, which of course goes through a process in the state courts and now here we are, you know, looking at it from a somewhat different point of view. And in fact, the state courts say, yeah, you know, no one is worried about the fact that she had a gun. They're saying, did you use a type of force that was too much for the circumstances? And the state didn't think so. So there we are. Well, but Your Honor, again, if you, if you don't even have to carefully parse Moore, and I don't want to quote my brief for the decision I'd like, but I do want to quote... You don't have to totally belabor Moore. We know what Moore said. I would like to just emphasize a couple points. At paragraph, at page 936, Judge Posner writes that Heller repeatedly invokes a broader, broader Second Amendment right than the right to have a gun in one's home. And I know it's emphasizing the home there, but then he says, as when it says the amendment quote, guarantees the individual right to possess, to possess and carry weapons in case of confrontation. So right there, he's, he's picking up on Heller as establishing a broader basis for Second Amendment protection. Right. But the thing is, so that means in the menu of things that you can use in a situation where state law would recognize a right to self-defense, there's a place for a firearm, just as there's a place for other types of weapons that you might use. Firearms are by no means the only weapon one could use in self-defense. So if a city, as in the pre-Heller days, were to pass a law saying, you know, you can't carry firearms around in this city, that law is no good anymore because we now have an individual right. We have Heller. We have McDonald. We have, you know, plenty of law that says that is not an option. The city has to allow you to train with a gun, but it doesn't define the circumstances under which any use of deadly force, whether a gun or, again, a switchblade or some other kind of weapon, can or cannot be used. I don't know why guns are different from switchblades. Well, because, Your Honor, the Heller case focused on the historical basis and it is extensive historical analysis involving guns and the historical significance of guns. And we're not arguing in this case that the right to, that the Second Amendment should apply to usages of weapons other than guns or, for example, semi-automatic rifles. So where do you get the idea that the right to self-defense is more capacious if you're using a gun than if you're using a switchblade? Well, this would come from the Supreme Court's decision in Heller, which, again, I'm sorry to keep going back to Moore, but I got to get this one We are disinclined to engage in another round of historical analysis to determine whether 18th century America understood the Second Amendment to include a right to bear guns outside the home. He's talking about the gun-focused analysis of Heller. Right, and so you can carry guns outside the home now. The only question is, can I use a gun on every person who annoys me when I'm driving my in Heller has decided that the amendment confers a right to bear arms for self-defense, which is as important outside the home as inside. This is the last paragraph. He says Heller links the right to bear arms with the right to self-defense. But it doesn't say that you get to self-assess when deadly force can be used. We have seen so many cases that raise this issue, even this spring. The underlying law about when you may resort to deadly force as an individual citizen is a separate body of law. And, Your Honor, our position does not diminish that body of law, but what we're saying is that these are all individual cases, and there can be cases where, as here, Calderon was acquitted on a directed verdict in the criminal court, and our position really is separate from that. We're saying, well, she was acquitted over there, and we're also saying that in this particular instance, the government also violated her Second Amendment right to use the gun in self-defense for civil purposes. We're not diminishing the criminal context. Now, if she'd lost the criminal case, I mean, this would be a frivolous appeal. I understand she won the criminal case, but I still will. I mean, I won't bother you anymore about this, but may I take you elsewhere, please? As with the First Amendment, public employers are allowed to discharge employees who exercise certain constitutional rights when that exercise reflects badly on the public employer. I may have missed it, of course, but I saw no acknowledgement in your brief that the city was acting as employer here rather than as a government entity. I'd like you to address the effect of the employment relationship on your claim. Okay, and that's where I go back. Yes, this is a case that arises out of the employment context. The difference is, is that the First Amendment has, you know, we've got the speaking as a private citizen versus public employee on a matter of public concern, and it's very case-by-case, and we're essentially arguing that this analysis for the Second Amendment should be done on a case-by-case basis. I'm not sure Enquist is case-by-case. The Supreme Court writes quite broadly in Enquist. Well, Enquist I took to be an equal protection case, if I'm not mistaken. I was thinking of the Garcetti case. Maybe we're missing each other, but the Garcetti case, you know, involves a real in-depth case-by-case analysis. Well, it just says, are you acting within the scope of your employment? And actually, it's a pretty expansive interpretation of what that might be. Oh, I'm sorry. Enquist would be, again, be a 14th Amendment. I mean, Garcetti, I'm saying, is an expansive interpretation of what's inside the scope of employment. I respectfully, all due respect, I think that it requires a I mean, they do say if you're acting, you know, as a public employee, then there's a certain set of rules that apply. If you're acting as a private citizen, a certain set of rules applies, but to get anything in the weeds and figure out how to apply that requires an in-depth case-by-case analysis, and Garcetti even says this is not a bright-line rule, and we're not advocating for a bright-line rule of the Second Amendment right in this particular case to use a gun in your Honor's question about the employment context, this is where the judge below did make another error, okay, and that error was that this was granted on a 12b6. The plaintiff gets the benefit of the complaint assumed true at that stage. Whatever happens later, we get that benefit at that stage. We get reasonable inferences drawn in our favor at that stage, and the thing about what that standard on page two, but then he just decides, he turns it into a summary judgment decision before the benefit of discovery, before we took any depositions of people involved on the basis of the video, and we can't gainsay that you can't look at a video and just decide, well, this is what it means. That's because of the bus stop. Right. If you'd like to save a little rebuttal time, this might be the time to do it. Oh, I'm out of time. Yes, I would like to save a little rebuttal time. Thank you, Your Honor. Certainly. So, I don't see Ms. Tischer. Oh, there you are. Ms. Tischer. The city? You're kind of freezing off and on. This is. Dismiss the complaint. This morning, I will explain that Ms. Calderon's use of her firearm was not protected by the Second Amendment and that her termination was proper in any event. In the alternative, the combination of qualified immunity and Monell provides the basis to affirm the dismissal. You know, you didn't cite to Moore. Can we get that out of the way? The plaintiff relies, seems to rely almost completely on it. You want to address that? Yes, Your Honor. So, the issue with Moore was whether the right to possess a firearm and self-defense extended beyond the home. And, but that case did not address the question that is at issue here. I should say the two questions that are issue here. One, whether the conduct that Ms. Calderon engaged in is actually protected by the Second Amendment. Whether her specific use of a firearm in under these circumstances is protected by the Second Amendment and whether the city's decision to terminate her based on the conduct that she exhibited as displayed in the video, whether that was reasonable under the circumstances. So, Moore did not address either of those questions and we do not dispute that Moore allows the use of a firearm. I'm sorry, holds that a firearm, the possession of a firearm in self-defense outside the home is permissible, but that does not answer the precise questions of this case. Well, so could I say, Ms. Tischer, I mean, it seems to me that you're arguing that the Second Amendment protects the right to keep and bear arms. It doesn't say anything about using and use is appropriate, of course, some of the time. It would be a meaningless right if you were just supposed to carry it around and never use it. And use is not appropriate some of the time because the underlying law doesn't allow disproportionate uses of force. But the scope of your ability to use isn't in there in the Second Amendment. Your Honor, there are definitely statements in Heller that we think fairly can be read to recognize the right to use a weapon in case of confrontation. And indeed, Heller does not expressly define how that right to use a firearm in self-defense is defined. But the court in Heller did explain that the right codified in the Second Amendment is a pre-existing right and that it's necessary in defining that right. It's important to look at the right as it was understood at the time at common law when the Second Amendment was adopted. And the Supreme Court also said in Heller that Blackstone's writings are the preeminent authority on English law at the time of the founding generation. And if we look to Blackstone's commentaries at that time, he explained that the right to self-defense that was widely understood in the 18th century was limited to two narrow categories of self-defense. And as we explained in our brief, that would be justified self-defense and excused self-defense. And Ms. Calderon does not allege that she engaged in either of the protected forms of self-defense recognized, widely recognized at that time, as Blackstone has explained in his commentaries. She does not allege that she was preventing any capital felony or that she lacked any fault in the incident as required for justified self-defense. Nor does she allege that she attempted to retreat from the quarrel before using lethal force or that it would have been impossible for her to do so as required for excused self-defense. So her actions in this case are clearly outside the scope of the protected Second Amendment right. So do you think then that Heller and the Supreme Court's decisions thereafter sketch out the limits on the way one can use a firearm? Because of course the Second Amendment right would be meaningless if all you could do was put a gun on the wall or carry around with it and pat it every now and then. I mean, use is understood to be part of what one is doing. Correct, Your Honor. And Heller and McDonald in subsequent cases from this court have, well, they have not expressly defined how that right to use a firearm, you know, the scope of the right to use a firearm in self-defense. They have consistently relied on the historical tradition of how the rights of self-defense were widely understood at the time the Second Amendment was adopted, which is why looking to the common law rather than at the varied state law rights of self-defense as it's sort of understood today, it's looking at that common law at the time the Second Amendment was adopted that is the relevant time period for assessing the scope of that right. But it's important in this case, Your Honor, to understand that this court does not need to even decide the scope of that right to decide this case in the city's favor because the city's termination of Ms. Calderon was reasonable regardless. And as the Supreme Court has explained, the government has a significantly greater leeway dealing with its employees in the context of employment than it does when it brings its sovereign power to bear on the citizens at large, and that a government employee's constitutional rights must be balanced against the realities of the employment context, as well as the government's interest in maintaining effective and efficient operations. So let me ask you this question. I want to back up a little bit. The city said that it was discharging Ms. Calderon because she discharged a firearm and shot Garcia. Suppose the city had said it was firing her because she was carrying a firearm outside the home. Could it do that? Didn't discharge it in my hypothetical. Didn't discharge it. Just was carrying it outside the home. Well, Your Honor, in light of the ANQUIST balancing, a government employee can terminate a government employee's employment for exercise of constitutional rights if the government does have an overriding interest. That might be a case, depending on the circumstances surrounding her carrying of a firearm. That might not be the case where the public's image would be damaged. It would call into question her ability to perform her job duties or in any way undermine the public's confidence in the city to carry out its public safety operations, which is why I'm sorry, Judge Rovner, did you have a question? No, not in the area that you're discussing. Okay. So that's why if we look at the video in this case, it was not a very clear case of self-defense. And there were these myriad circumstances leading up to the use of force, the shooting of Ms. Garcia. Ms. Calderon demonstrated outrageously poor judgment in taking matters into her own hands and confronting Ms. Garcia. She provoked and acted aggressively toward Ms. Garcia, even preventing Ms. Garcia from leaving the scene peacefully, essentially inciting the very quarrel that resulted in the use of lethal force. So this is not the type of situation where, say, in your hypothetical or in Judge Wood, your hypothetical that you proposed to appellant where one might just be minding their own business and is approached with a gun and threatened. This was a situation where there were a number of circumstances that reflected very poorly. It was very reasonable for the city to believe would reflect very poorly on its public image and create the appearance of impropriety, in particular in the context of Ms. Calderon's employment in this case where she herself works as a police dispatcher. I'm sorry, as a dispatcher in the Office of Emergency Management Communications and is required to respond to calls from the public, is required to provide assistance and even de-escalate emergency situations. The conduct that she exhibited in this case was directly contrary to the qualities that one would expect in someone holding that position and would certainly call into question the public's confidence would be undermined in the city's ability to carry out that very public safety service. But at minimum in this case, the individual defendants are entitled to qualified immunity because Ms. Calderon has not identified any case clearly establishing that its decision to terminate her for shooting Ms. Garcia violated the Second Amendment or that its decision exceeded the city's authority to terminate employees for unprofessional and dangerous conduct. So are you essentially arguing here that the city's, despite the acquittal in the criminal proceeding, that the city is entitled to assess the act of discharging a firearm as being outside the scope of legitimate self-defense and moving, you know, probably on a preponderance basis or something like that, moving to end her employment, even though from a criminal point of view, the state court seemed to think it was a pretty clear case of self-defense, but that the city's allowed to have a different assessment of that? Well, Your Honor, in this case, the acquittal stands for really nothing more than the trial court's determination that Ms. Calderon, I'm sorry, that the state was failed to prove beyond a reasonable doubt that Ms. Calderon was not exercising the right to self-defense. And that decision does not bear on the city's decision here, partly because the city was not a party to that case. The allocations, the standard of proof is different and the allocations of burden are different in that case as well. The allocation of burden on that case fell on the state, and in this case, it falls on Ms. Calderon. But furthermore, this was not, while the trial court did find that it was, that it believed it was self-defense or found that it was self-defense, from the city's perspective in viewing this video and the circumstances surrounding the shooting, it was not such a clear case of self-defense. And at the time the city made its decision to terminate Ms. Calderon's employment, the court had not made its decision yet. She had not yet been acquitted. And in fact, had been, the city was aware that she had been arrested for attempted murder, arrested and charged with attempted murder. In addition, it had this video showing what was not a clear case of self-defense and what contained a lot of conduct leading up to and resulting in that act of using her firearm against Ms. Garcia. Isn't it so that the state court finding her not guilty on the basis of self-defense is not particularly relevant because Illinois law on self-defense differs from the historical understanding of the Second Amendment right to self-defense? Correct, Your Honor. Looking to the historical understanding of self-defense as it would have been viewed in the 18th century when the Second Amendment was adopted, it does not require any duty to retreat. And that was true of American law through at least the late 19th century. So the question of what Second Amendment activity is actually protected is different in this case than it was as far as the acquittal. And most importantly, the acquittal does not provide, that's not any clearly established law for the purposes of qualified immunity to show that the defendants were unreasonable in their determination to discharge Ms. Calderon for this conduct. And furthermore, just briefly, I would like to explain that the city as well is to the city's liability, Ms. Calderon's Monell claim also fails because she has not alleged a constitutional injury as we have explained. But also because she has not alleged that the personnel policies are facially invalid, that they resulted in a series or that they resulted in a series of unconstitutional acts or that the individual defendants had any policymaking authority. Nor does she allege that she would not have been fired, but for these specific personnel policies or that her termination was a foreseeable result of those policies. If there are no, and I will, as far as the due process claim, we rest on our briefs on that claim. And if there are no further questions, we ask this court to affirm the judgment of the district court. All right. I see none. So thank you very much. Anything further, Mr. Casper? Your Honor, I'd just like to make one point in rebuttal. I'm going to quote page 942 of Moore again, which Your Honor Roper, you're correct. I have almost exclusively relied on this case, and that's intentional. Judge Posner says, the Supreme Court has decided that the amendment confers a right to bear arms for self-defense, which is as important outside the home as inside. That is a clearly established statement of law from 2012, but remains good to this day. Last thing, much of the city's argument has been, well, take our word for it, judges. Take our word as to the meaning of the video. Take our word as to what really happened. Ms. Calderon says something different happened. She's entitled to the presumption of truth of completed allegations in the First Amendment complaint and to inferences drawn in her favor at this date. For those two reasons, we would ask that this Court respectfully reverse the decision in this report and preempt further proceedings. If there's no further questions, I yield the remainder of my time. Thank you. I see none, so thank you very much, and thanks as well to Ms. Tischer. The Court will take the case under advisement.